IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

US METHANOL, LLC,

        Plaintiff,

v.                                        CIVIL ACTION NO. 2:19-cv-00219

CDI CORPORATION, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant CDI Corporation's Motion to Dismiss [ECF No. 5]. For the reasons that follow, the Motion is **GRANTED in part** and **DENIED in part**.

I.    Background

As alleged in the complaint, on November 10, 2016, CDI Corporation ("CDI") and US Methanol LLC ("US Methanol") entered into an On-Site Staffing Services Agreement ("Agreement"). In the Agreement, CDI contracted to provide an employee to US Methanol for engineering services related to the design of the foundation of a methanol plant. The complaint alleges CDI breached its contractual duties by not providing an adequate engineer and by failing to adequately design the foundation for the project. US Methanol suffered damages as a result. US Methanol commenced the current action against CDI and the employee CDI provided, Randall Chase.

The complaint alleges five counts: Count I, Breach of Contract Against CDI; Count II, Professional Negligence and/or Negligence Against Randall Chase; Count III, Professional Negligence and/or Negligence Against CDI; Count IV, Negligent Selection, Recommendation and Placement Against CDI; and Count V, Vicarious Liability of CDI for Professional Negligence and/or Negligence of Randall Chase.

On April 11, 2019, CDI moved to dismiss the claims against it for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The court construes the motion before us as a motion to dismiss and will only consider the pleadings and any "documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). Because the complaint incorporates the Agreement, the court will consider the Agreement in deciding the motion to dismiss. The court will not consider the additional attached exhibits by CDI, including the emails in Exhibit B and the affidavit in Exhibit C. The court also will not consider the attached Exhibit A in US Methanol's response.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-

01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

### III. Discussion

#### 1. Breach of Contract

US Methanol alleges in Count I that CDI breached its contractual duties to US Methanol in the Agreement.

A breach of contract action in West Virginia requires "(1) the existence of a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result." *Safeco Ins. Co. of Am. v. Mountaineer Grading Co.*, No. 2:10-CV-01301, 2012 WL 830158, at *4 (S.D.W. Va. Mar. 9, 2012). A court "deciding disputes about the meaning of a contract…will

endeavor to carry into effect the intent of the parties to the agreement." *Id.* (quoting *Bennett v. Dove*, 277 S.E.2d 617, 618 (W.Va. 1981)).

Courts "should give the words in a contract their ordinary meaning" and are not "to alter, pervert, or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract." *Id.* An agreement expressing the parties' intentions in "plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." *Id.* To survive a motion to dismiss, a plaintiff must allege "the breach on which the plaintiffs found their action…[and] the facts and circumstances which entitle them to damages." *McNeely v. Wells Fargo Bank, N.A.*, No. 2:13-CV-25114, 2014 WL 7005598, at *9 (S.D.W. Va. Dec. 10, 2014).

US Methanol alleges that pursuant to the Agreement, CDI breached its contractual duties by failing to provide US Methanol with an engineer qualified to design the foundation of the methanol plant and failing to adequately design the foundation of the methanol plant. As a result, US Methanol claims it was forced to incur additional foundation design and construction costs, delays, and lost profits.

In looking at the plain meaning of the words in the Agreement, the Agreement does not say anywhere that CDI had an obligation to adequately design the foundation for the methanol plant. In fact, the Agreement states that its purpose is to "confirm the staff augmentation services," and that Mr. Chase will perform "all assigned tasks under [US Methanol's] day-to-day supervision." Agreement [ECF No. 5-1] at 1 (brackets added). The Agreement does not demonstrate that the parties

intended CDI to perform any duties through Mr. Chase, but rather that Mr. Chase would work under the direction, supervision, and control of US Methanol.

The next allegation by US Methanol is that CDI breached the Agreement by failing to provide a qualified engineer for designing the foundation of the methanol plant. CDI argues it was "under no obligation to provide an employee with particular qualifications or supervise the quality of his work in any way." Def's Mem. Mot. Dismiss [ECF No. 6] at 3.

The Agreement does not say that CDI promised to provide an engineer qualified for designing the foundation for the methanol plant. However, the language of the Agreement states that CDI is "*committed* to providing [US Methanol] with personnel whose abilities meet or exceed your expectations." Agreement [ECF No. 5-1] at 1 (emphasis added). The word "commitment" means "[a] promise to do something or to behave in a particular way. *Black's Law Dictionary* (11th ed. 2019) (Westlaw) (defining commitment). Thus, in looking at the plain language of the contract, by committing to provide US Methanol with an employee who meets or exceeds their expectations, CDI was promising to perform this action. Yet, US Methanol alleges in their complaint that the employee provided by CDI, Mr. Chase, did not have the qualifications to design the methanol plant's foundation and thus did not meet or exceed their expectations. *See* Compl. [ECF No. 1-2].

At this stage, in accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff, CDI's Motion is **DENIED** as to Count I as to the allegation by US Methanol that CDI failed to provide US Methanol with a

qualified engineer. CDI's Motion is **GRANTED** as to Count I's allegation that CDI failed to adequately design the foundation of the methanol plant.

### 2. "Gist of the Action"

US Methanol alleges negligence claims against CDI in Counts III, IV, and V for professional negligence and/or negligence; negligent selection, recommendation, and placement; and vicarious liability for the professional negligence and/or negligence of Randall Chase.

In West Virginia, courts apply the "gist of the action" doctrine "to prevent the recasting of a contract claim as a tort claim." *Travelers Prop. Cas. Co. of Am. v. Mountaineer Gas Co.*, No. 2:15-CV-07959, 2015 WL 7196515, at *2 (S.D.W. Va. Nov. 16, 2015) (quoting *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 577 (W. Va. 2013). Under this doctrine, the negligence "action in tort [must] arise independent of the existence of the contract." *Dan Ryan Builders, Inc. v. Crystal Ridge Dev.*, Inc., 783 F.3d 976, 980–82 (4th Cir. 2015). "If the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or non-feasance, it is, in substance, an action on the contract, whatever may be the form of the pleading." *Id.* (quoting *Cochran v. Appalachian Power Co.*, 246 S.E.2d 624, 628 (W.Va. 1978)).

Recovery in tort is barred under the gist of the action doctrine if any of the following factors is demonstrated:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort

claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Id.*

US Methanol has not alleged any tort claim independent of the existence of the contract. Each negligence claim relies upon the contractual relationship between the parties, and any liability stems from CDI breaching the contract.

Under Count III, US Methanol alleges that CDI was negligent because it prepared an inadequate foundation design. However, that obligation depends upon the Agreement between US Methanol and CDI and is not independent of the contract.

The Negligent Selection, Recommendation and Placement claim in Count IV and the Vicarious Liability claim in Count V are restatements of the contract claim. Earlier in Count I, US Methanol alleged CDI breached the Agreement by not providing US Methanol with a properly qualified engineer. Then, in the negligent selection claim of Count IV, US Methanol alleges CDI breached its duty when it recommended an engineer who is not qualified. Similarly, in the vicarious liability claim in Count V, US Methanol alleges that as a result of CDI not providing a qualified engineer, CDI is vicariously liable for Mr. Chase's negligence. Thus, "the tort claim[s] essentially duplicate[] the breach of contract claim[s]," and are therefore barred under the gist of the action doctrine. *See Dan Ryan Builders*, 783 F.3d at 980–82 (4th Cir. 2015) (quoting *Gaddy*, 746 S.E.2d 568, 577).

Therefore, recovery in tort is barred by the gist of the action doctrine, and CDI's Motion is **GRANTED** as to Counts III, IV, and V.

### 3. "Borrowed Servant Doctrine"

Alternatively, the "borrowed servant" doctrine would bar CDI's liability for Mr. Chase's actions. Under the borrowed servant rule "a general employer remains liable for the negligent act of his servant unless it affirmatively appears that he has completely relinquished control of the servant's conduct from which the alleged negligence arose to the person for whom the servant is engaged in performing a special service." *Bailey v. Allegheny Energy Serv. Corp.*, No. 6:08-CV-00137, 2009 WL 10688060, at *2–3 (S.D.W. Va. Mar. 11, 2009) (quoting *Burdette v. Maust Coal & Coke Corp.*, 222 S.E.2d 293, 295 (W. Va. 1976)). "The mere sharing or borrowing of [employees] or the partial relinquishment of control by the general employer[ ] does not relieve the employer of liability." *Id.* The test is "who has the power to control and direct the servants in the performance of their work." *Id.* The court "may look at factors such as the supervision of the employee, the ability to unilaterally reject the services of an employee, the payment of wages and benefits either directly or by pass-through, or the duration of employment."

In this case, the Agreement states that US Methanol will be in charge of the "[t]echnical direction of the work being performed by Randal Chase on assignment" and that "the content of such work will be [US Methanol's] responsibility." Agreement [ECF No. 5-1] at 2. The Agreement also says that Mr. Chase "will perform all assigned tasks under [US Methanol's] day-today supervision." *Id.* at 1. In addition, US Methanol agreed to indirectly paid Mr. Chase through CDI's issuing of biweekly invoices. *Id.* The Agreement thus states sufficient facts to demonstrate that US

Methanol directed and controlled the work of Mr. Chase. Therefore, in the alternative, CDI would not be liable for the negligent acts of Mr. Chase.

IV. Conclusion

For the reasons stated herein, Defendant CDI Corporation's Motion to Dismiss [ECF No. 5] is **GRANTED in part** and **DENIED in part**.

Defendant CDI's Motion to Dismiss Counts III, IV, and V is **GRANTED**. Defendant CDI's Motion to Dismiss Count I is **GRANTED** as to the allegation CDI failed to adequately design the foundation of the methanol plant and is **DENIED** as to the allegation that CDI failed to provide US Methanol with a qualified engineer.

Count I's allegation that Defendant CDI breached the agreement by failing to design the foundation of the methanol plant is **DISMISSED with prejudice**. Counts III, IV, and V are also **DISMISSED with prejudice.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 21, 2019

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE