IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

US METHANOL, LLC,

        Plaintiff,

v.                              CIVIL ACTION NO.  2:19-cv-00219

CDI CORPORATION, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant CDI Corporation's Motion for Summary Judgment, [ECF No. 72], Plaintiff US Methanol's Motion for Summary Judgment, [ECF No. 74], and Defendant Randall Chase's Joinder of CDI Corporation's Motion for Summary Judgment Concerning Certain Specified Issues. [ECF No. 76]. The court will address all of the motions now. For the reasons that follow, summary judgment is **GRANTED** to Defendant CDI and **DENIED** to Plaintiff US Methanol. Summary judgment as to Defendant Chase's certain specified issues is **DENIED**.

I.    **Introduction**

Defendant CDI Corporation ("CDI") provides engineering, design, architecture, and project support services to the energy, chemicals, and infrastructure markets, including staff augmentation services. Def. CDI's Mem. Supp. Summ. J. [ECF No. 73]. Plaintiff US Methanol, LLC ("US Methanol") is a start-up company that, at all

times relevant hereto, was relocating a methanol plant from Rio, Brazil to Institute, West Virginia. Pl.'s Mem. Supp. Summ. J. [ECF No. 75] 3. US Methanol is the parent company of Liberty One Methanol, LLC ("Liberty One"), a separate legal entity that owns and is constructing a methanol plant in Institute, West Virginia ("the Project"). [ECF Nos. 73, 79]. "Liberty One was formed in April of 2017 – about six (6) months after CDI placed Mr. Chase at US Methanol and a couple of months after Mr. Chase completed his design work on the auger cast piles and issued construction work packages." Pl.'s Resp. Def. CDI's Summ. J. [ECF No. 79] 5.

Both CDI and US Methanol state that the material facts are not in dispute. [ECF Nos. 73, 79]. In October 2016, US Methanol approached CDI for assistance locating a civil engineer to work on the Project. US Methanol provided CDI with Defendant Randall Chase. The terms of that staffing placement were memorialized in an On-Site Staffing Services Agreement ("Agreement") dated November 10, 2016, which forms the basis of this breach-of contract action. *See* Agreement, Ex. O [ECF No. 77]. Defendant Chase worked for US Methanol for about a year, until US Methanol terminated Chase's assignment, contending that Chase did not properly design the piles and foundation for the Project and allegedly caused additional design and construction costs around $5 million and lost profit of $20.9 million due to construction delays. The parties differ in their characterization of CDI's staff-augmentation services and how US Methanol decided to hire Defendant Chase.

2

i)     CDI's version

CDI argues that it was responsible for locating potential candidates based on a job description provided by US Methanol. CDI explains that when they suggested Defendant Chase to US Methanol and provided his resume, US Methanol's project manager reviewed his resume and said that Chase "has far more qualifications than we need or can justify paying for," and called him a "ho[t] commodity." Def. CDI's Mem. Supp. Summ. J. [ECF No. 73] 1, 5. At the same time, Mr. Beverly with US Methanol "expressed some hesitation, stating 'I am concerned that [Chase] has no plant experience on his resume or large structures, but if he has good skills we would still be interested.'" *Id.* at 5. "Beverly also found out during the first interview that Chase was not a professional engineer." *Id.* However, according to CDI, "any concerns held by Beverly were satisfied during the interview…as he and Gunn [a professional engineer with US Methanol] came away with the impression that Chase was qualified to fill the civil engineer position." *Id.*

CDI avers that when CDI proposed Chase, it was up to US Methanol to review his credentials, interview him, evaluate whether he could fill the position, and decide whether to hire him. CDI argues that this is exactly what occurred, only now US Methanol believes that it made a bad decision to hire Defendant Chase and wants to blame CDI for that mistake. According to CDI—Chase and US Methanol are to blame.

ii)    US Methanol's version

According to US Methanol, US Methanol conveyed to CDI that it needed an experienced civil engineer with the ability to do piles and foundations—the auger cast piles—in October of 2016. Pl.'s Mem. Supp. Summ. J. [ECF No. 75] 6–7. US Methanol spends almost two pages of its summary judgment motion with quotes from CDI's website, which praises CDI's ability and experience in placing temporary staff with their clients. *Id.* at 5–6. Specifically, Mr. Beverly, an engineer with US Methanol, emailed Ms. Glandon with CDI saying that US Methanol needed "a Senior Civil Engineer with a chemical/industrial background, familiar with relevant codes who could engineer and design civil and structural systems including concrete foundations." *Id.* at 7. Ms. Glandon compiled the US Methanol engineering need into a Requisition, shared it with Mr. Hill, head of CDI's West Virginia operations, who said it "[l]ooks good." *Id.* CDI identified Mr. Randall Chase and believed he would be a "great fit" for US Methanol. *Id.*

To confirm that Mr. Chase was indeed a "great fit," Ms. Glandon wanted Mr. Jones of CDI to give Mr. Chase a "technical" talk to ensure that "Mr. Chase knew how to do what he was supposed to do for US Methanol." *Id.* But "Mr. Jones never had the technical talk with Mr. Chase." *Id.* at 9. Nevertheless, "Ms. Glandon forwarded Mr. Chase's resume to Mr. Beverly and told Mr. Beverly that 'I feel that he [Mr. Chase] would be a great candidate for this position.'" *Id.* at 10. "Though Mr. Beverly had

some reservations about Mr. Chase's lack of plant experience, US Methanol decided to interview Mr. Chase for the civil engineering position." *Id.*

In the first interview by US Methanol of Defendant Chase, Mr. Beverly talked to Mr. Chase about the Project, specifically asking Chase about his experience designing auger cast piles. *Id.* Defendant Chase responded he had the requisite experience. *Id.* Mr. Beverly checked Mr. Chase's references, scheduled a second interview with the CFO and COO of US Methanol, and then was given the "greenlight" for the placement of Mr. Chase at US Methanol. *Id.* To formalize the placement of Mr. Chase, CDI required that US Methanol enter into the Agreement.

"Mr. Chase's placement at US Methanol started on November 14, 2016 and he was immediately tasked with designing the auger cast piles for the methanol plant." *Id.* at 11. "Mr. Chase's design work continued into February of 2017 when Mr. Chase produced foundation drawings and auger cast pile designs that were issued for construction," covering all major components of the methanol plant. *Id.* "In August and September of 2017, as the auger cast piles were being installed pursuant to Mr. Chase's design, issues arose about the top of pile elevations being wrong and there not being enough concrete coverage over the rebar cages in the pile caps." *Id.* US Methanol was required to halt construction, and it hired an engineering firm to investigate. *Id.* The engineering firm discovered that "the auger cast piles designed by Mr. Chase did not extend to and socket into the bedrock – substantially reducing each pile's bearing capacity." *Id.* "The additional engineering and construction costs

5

associated with Mr. Chase's civil engineering bust is a little over $5,000,000.00. Additionally, the date the methanol plant will be operational has been delayed by the bust – costing US Methanol almost $800,000.00 in lost profits for each week the start-up of the methanol plant is delayed." *Id.* at 11–12. US Methanol avers that Defendant Chase objectively did not meet or exceed US Methanol's needs and that CDI breached the Agreement by placing Mr. Chase in the US Methanol assignment.

### iii) Procedural History

On October 21, 2019, this court granted CDI's Motion to Dismiss Counts III, IV, V, and Count I as to the allegation CDI failed to adequately design the foundation of the methanol plant. [ECF No. 50]. The Motion to Dismiss was denied as to Count I's allegation that CDI failed to provide US Methanol with a qualified engineer. On March 19, 2020, CDI filed a Motion for Summary Judgment. [ECF No. 72]. On March 19, 2020, US Methanol also filed a motion for Summary Judgment. [ECF No. 74]. On March 19, 2020, Defendant Randall Chase filed a Joinder of CDI Corporation's Motion for Summary Judgment Concerning Certain Specified Issues. [ECF No. 76].

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Instead, the

6

court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson,* 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987).

## III.   Discussion

### a)  Summary Judgment as to Defendant CDI and US Methanol

A breach of contract action in West Virginia requires "(1) the existence of a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result." *Safeco Ins. Co. of Am.*

*v. Mountaineer Grading Co.*, No. 2:10-CV-01301, 2012 WL 830158, at *4 (S.D.W. Va. Mar. 9, 2012). A court "deciding disputes about the meaning of a contract…will endeavor to carry into effect the intent of the parties to the agreement." *Id.* (quoting *Bennett v. Dove*, 277 S.E.2d 617, 618 (W. Va. 1981)). Courts "should give the words in a contract their ordinary meaning" and are not "to alter, pervert, or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract." *Id.* An agreement expressing the parties' intentions in "plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." *Id.*

In addition, West Virginia has found that contract law "permits courts to protect parties from grossly unfair, unconscionable bargains; it does not permit courts to protect commercial litigants from stupid or inefficient bargains willingly and deliberately entered into." *Blackrock Capital Inv. Corp. v. Fish*, 799 S.E.2d 520, 532–33 (W. Va. 2017) (quoting *State ex rel. Johnson Controls, Inc. v. Tucker*, 729 S.E.2d 808, 819 (W. Va. 2012)).

At issue here is whether CDI breached its Agreement with US Methanol by failing to provide US Methanol an engineer who met or exceeded US Methanol's expectations. US Methanol argues that because Mr. Chase was objectively not qualified to design the concrete foundations—the auger cast pilings—for the Project, CDI breached its obligation under the Agreement to place a civil engineer at US Methanol who met or exceeded US Methanol's needs and expectations.

8

The Agreement provides the following:

[Defendant Chase] will perform all assigned tasks under your day-to-day supervision. You may terminate this agreement at any time by notifying us. . . . We are committed to providing you with personnel whose abilities meet or exceed your expectations. However, we cannot accept responsibility for matters outside of our reasonable control. Accordingly, if you become dissatisfied with the performance of any of the personnel we send to you for any lawful reason, you may cancel their assignment by notifying us that you are dissatisfied. If you do so during the first 40 hours of a person's assignment, you will not have to pay us for the hours worked by that person and we will immediately seek to supply you with a replacement. *If you keep a person on assignment for more than 40 hours, it is agreed that the person's performance will be considered satisfactory* and you will pay the bill for the person when it is rendered. Technical direction of the work being performed by Randall Chase on assignment, and the content of such work, will be your responsibility.

*See* Agreement, Ex. O [ECF No. 77] (emphasis added).

It is undisputed that Chase worked for US Methanol for almost a year. In looking at the plain language of the contract, it states that "[i]f you keep a person on assignment for more than 40 hours, it is agreed that the person's performance will be considered satisfactory." *Id.* The promise to provide a qualified person is circumscribed by the limitation of satisfaction after 40 hours of performance. Once US Methanol accepted the 40 hours of performance, they could no longer bring a claim that they were dissatisfied with Chase pursuant to the terms of the Agreement. I do not find the contract unconscionable as both parties are commercial entities which "willingly and deliberately entered into" the contract. *See Tucker*, 729 S.E.2d at 819. Therefore, US Methanol found Mr. Chase satisfactory under the terms of the agreement. Summary judgment is **GRANTED** to CDI and **DENIED** to US Methanol.

9

### b) Defendant Randall Chase's joinder of certain arguments

Defendant Randall Chase joins certain arguments in CDI's Motion for Summary Judgment. Specifically, Mr. Chase joins CDI's arguments concerning US Methanol's inability to recover consequential damages because they were suffered by its subsidiary, because consequential damages were not contemplated by the Agreement between US Methanol and CDI Corporation, and because US Methanol did not actually suffer lost profit damages. [ECF No. 76]. Chase further argues that because said damages were suffered by a separate legal entity, Liberty One, US Methanol is not the real party in interest and does not have standing to bring suit on behalf of Liberty One. [ECF No. 82].

Defendant Chase is not a party to the Agreement, which is between US Methanol and CDI. The breach of contract claim brought by US Methanol in Count I of the Complaint is brought only against Defendant CDI and is inapplicable to Defendant Chase. *See* Compl. [ECF No. 1-2]. The only issue in dispute between CDI and US Methanol is whether CDI breached the Agreement. *See* Def. CDI's Resp.to Pl.'s Summ. J. [ECF No.77] ("The Agreement is between CDI and US Methanol, and that Agreement alone forms the basis for this action."). And CDI's arguments regarding damages and whether US Methanol is the real party in interest relate to the Agreement and the breach of contract action between US Methanol and CDI. Accordingly, there is no "case or controversy" between US Methanol and Defendant Chase regarding Count I's breach of contract action. Therefore, I **DENY** Defendant

10

Chase's Joinder of CDI Corporation's Motion for Summary Judgment Concerning Certain Specified Issues.

## IV.  Conclusion

For the foregoing reasons, summary judgment is **GRANTED** to Defendant CDI, [ECF No. 72], and **DENIED** as to Plaintiff US Methanol. [ECF No. 74]. Defendant Randall Chase's Joinder of CDI Corporation's Motion for Summary Judgment Concerning Certain Specified Issues, [ECF No. 76], is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          June 5, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

11